Mr. Justice Merrick
delivered the opinion of the Court:
The court has had under consideration the application of Anthony Pollok for a writ of mandamus against the Commissioner of Patents to compel him to give a certified copy of a certain abandoned application for a patent remaining on file in the archives of that office.
In response to that application, the Commissioner sets up that, while he considers that the relator is an attorney in the regular practice of his profession before the Patent Office, and that he is also in point of fact the attorney employed by the party in whose behalf he makes the application for the copy in question, he has no right to it:
*15 First. Because he is not the party having the legal title to the subject-matter;
Second. That it does not appear that the paper is really requisite for the purposes of evidence in the alleged cause; and
Third. That under Rule 179 of the Patent Office the Commissioner of Patents has a discretion to grant or withhold information in that class of cases at his pleasure, or at his discretion — the terms as used, seem to be convertible.
In order to ascertain if there were just foundation for the refusal of the Commissioner of Patents, as well as to understand the scope of that refusal, it is proper for a moment to advert to first principles. For what was the Patent Office established ? What was the design of its institution ? And what rights does it protect? We know that at common law there was no such thing as a monopoly in an invention, or a monopoly in the use of knowledge which the party possessing it had once communicated in any manner to his fellow beings; that the revelations of thought and intellect are common property, and there is no monopoly or exclusive right in such things, except so far as they have been conferred by positive law; and positive law has never gone any further to confer exclusive property in such things than for purposes of encouragement of science, and the development and advancement of art. That it may not be supposed that the court is for the first time announcing this as a general principle of the common law, though it is familiar to all lawyers, we refer to the language of the Supreme Court in the case of Gayler vs. Wilder, 10 Howard, 495, and read a certain passage from that opinion:
“ Now, the monopoly granted to the patentee is for one entire thing; it is the exclusive right of making, using, and vending to others to be used, the improvement he has invented and for which the patent is granted. The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated *16 by the rules of the common law. It is created by the act of Congress, and no rights can be acquired in it unless authorized by statute and in the manner the statute prescribes.”
The authority for legislation on the subject is found in that clause of the Constitution which says: “The Congress shall have power to promote the progress of science and the useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries.”
Here we find the entire scope of the right of exclusiveness; and as involved in the right of exclusiveness the entire scope of the right of secrecy. In pursuance of the above delegation of power, Congress has established the Patent Office, and has established certain rules and regulations with respect to it, and amongst those rules the only rule of secrecy is that which is made in aid of the inventor, who has not yet perfected his design, and which enables him to present an application to the proper authorities to secure his invention, and while he is using all diligence to confer upon the public the knowledge that he possesses, it gives him further opportunities to perfect his invention before he makes an application for a definitive patent. That limitation of the authority of publicity, that single'grant of secrecy, is to be found in Section-4902 of the Revised Statutes, in these words:
“Any citizen of the United States who makes any new invention or discovery and desires further time to mature the same, may, on payment of the fees required by law, file in the Patent Office a caveat setting forth the design thereof and of its distinguishing characteristics, and praying protection of his right until he shall have matured his invention. Such caveat shall be filed in the confidential archives of the office and preserved in secrecy, and shall be operative for the term of one year from the filing thereof; and if application is made within the year by any other person *17 for a patent with which said caveat would, in any manner, interfere, the Commissioner shall deposit the description, specifications, drawings, and model of such application, in like manner, in the confidential archives of the office and give notice thereof, &c.”
That is the only qualificatiori in regard to publicity which' runs through the entire patent law, because you will find, not only from the general principles that have been spoken of, but also from the provisions of various sections of the patent law, that there is an obligation on the part of the officers of the Patent Office to make known, and to disseminate before the public the knowledge of all inventions. They are required by divers sections to publish from time to time and have printed, and that, too— under seal so that they may be evidence in courts of justice — volumes containing the specifications, descriptions and drawings of all patents that have been issued under the authority of the United States. See Secs. 490, 491, R. S. U. S.
Besides being required to make these public communications of knowledge for the benefit of mankind, to promote the progress of science and the useful arts, there is a section, 493, which makes it incumbent upon the Commissioner of Patents to give specific information, by uncertified copies, which goes on to say:
“ The price to be paid for uncertified printed copies of specifications and drawings of patents shall be determined by the Commissioner of Patents, within the limits of ten cents as the minimum and fifty cents as the maximum price.”
So that by this section of the law it is the right of any and every man to obtain an uncertified copy of specifications and drawings on file in the Patent Office at the minimum price to be fixed by law.
• Besides that, and besides the general provision in regard to published copies of the proceedings in the Patent Office *18 under seal, there is another provision in Section' 892 for certified copies in particular classes of cases:
“ Written or printed copies of any records, books, papers or drawings belonging to the Patent Office, and of letters patent, authenticated by the seal and certified by the Commissioner or Acting Commissioner thereof, shall be evidence in all eases wherein the originals could be evidence; and any person making application therefor and paying the fee required by law shall have certified copies thereof.”
Now, the Commissioner of Patents, in his response to the present application of the relator, seeks to withdraw this case from the ordinary requirements of publicity and bring it within the special requirements of secrecy under Section 4894, which is in these words:
“All applications for patents shall be completed and prepared for examination within two years after the filing of the application, and in default thereof, or upon failure of the applicant to prosecute the same within two years after any action therein, of which notice shall have been given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable.”
In connection with that clause of the statute they have promulgated a rule in the Patent Office, Rule 179, which is as follows:
“Copies of the files of rejected and abandoned applications may be furnished when ordered by the Commissioner. The requests for such copies must be presented in the form of a petition properly verified as to all matters not appearing of record in the Patent Office.”
It is upon the construction of that rule, as compared with the clause of the statute that I have read, that the Commissioner seeks to maintain that he has a discretionary power to grant or refuse an application. Why? Is there anything in the law which I have read about the duration of *19 time when an application may remain without abandonment that justifies the supposition that the right of secrecy shall attach to an application of that sort after it has laid in the office during all the period provided by law? The statute expressly says that after it has laid in the office the period provided by law (viz., two years) as an unperfected application, it shall be considered as abandoned unless there be good cause of delay shown, which is not in this case.
What is abandonment? The definition is given in the case which I have already quoted by one of the judges in part of one of the opinions there, that abandonment is a dedication to the public — that is to say, that the party has withdrawn himself from the claim of monopoly and exclusive use which he might have had for his invention, and notwithstanding whatever it may be worth, it thenceforth belongs to the public — it is abandoned to the public.
Now, when a thing has been dedicated to the use of the public — taken out of the special provisions contemplated in the monopoly in favor of an individual in derogation of the principles of the common law — the question arises, Can the Commissioner of Patents assume a discretionary power to keep that in secret which belongs to the public — that which the inventor thought out, under the revelation of the Divine mind, and which has been consecrated to the use of mankind ? It cannot be. And while the Commissioner of Patents has the right to make all just rules and regulations for the administration of his office, he has no right to make a rule which derogates from common right and deprives mankind of that which belongs to it as common property.
Then, according to the construction which has been indicated as flowing from these statutes, an application once made and filed in the Patent Office belongs to the whole public, and, according to the scheme of the patent law, everything placed in the Patent Office (completed or in-completed) belongs to the public, subject to the qualification *20 of the individual rights of the applicant and patentee. Then has not .every man a right in common to the benefit of that knowledge which is thus dedicated to the public ?
It was urged in the argument that the Commissioner had a right to hold abandoned applications as part of the secret and confidential archives by reason of a decision of the Supreme Court in Brown vs. Guild, 23 Wallace, 181. All that the Supreme Court decided in that case as to abandoned applications was that an abandoned application stood upon the same level with an abandoned experiment, and did not constitute a bar, within the terms of the patent law, to the grant of a patent to a subsequent discoverer. They say in that case that “a mere application for a patent is not mentioned [in the Statutes] as a bar. It can only have a bearing on the question of prior invention or discovery. If upon the whole of the evidence it appears that* the alleged prior invention or discovery was only an experiment and was never perfected, or brought into actual use, but was abandoned and never revived by the alleged inventor, the mere fact of having unsuccessfully applied for a patent therefore can not take the case out of the category of unsuccessful experiments.” But there is nothing in that decision which detracts from the right of the public to the knowledge which the applicant has by his abandonment placed at the disposal of the public. On the contrary, the court recognizes distinctly that such application may have a bearing upon the question of prior invention. If, then, it be, in the opinion of the Supreme Court, a proper element of evidence when the question of prior invention or discovery arises, it must follow that the Commissioner of Patents cannot withhold the necessary information to be derived from the record of such application whenever it may reasonably be demanded for the purposes of evidence, as in the controversy now before us.
The only question that remains is whether an applicant for information thus withheld is entitled to the compulsory *21 process of a court of justice to require the disclosure of that knowledge and possession of the proper evidences of that knowledge.
The writ of mandamus, being a prerogative writ, as it is called — one not to be granted upon light considerations— is yet a writ which belongs to every citizen where the law gives him no other remedy, and where it appears that he has a right which has been obstructed. To put a familiar case, before going on with the one under consideration: Suppose an attorney at law, in the progress of his professional business and avocation, has occasion- to' go the office of the Recorder of Deeds for the purpose 'of investigating a title, or of gaining knowledge in respect to a title there of record, and the Recorder of Deeds refuses him permission to examine the records: Is it not clear that he is entitled to the benefit of the writ of mandamus for that purpose? Is not the right of the client, and is not also the right of the attorney at law employed by the client in the ordinary pursuit of his profession, violated so as to give him a substantial position in a court of justice to demand redress for the wrong which has been committed upon him?
Now, how does that case differ in substance from the application which has been made in this particular case? The relator sets forth that he is an attorney at law in the pursuit of his profession; that he has constant occasion to inspect and examine the records which are on file within the office of the Commissioner of Patents; that in this particular case he has been delegated by his client to obtain information in this particular case requisite for the purpose of a suit now* pending between his client and the party interested or supposed to be interested in this application in the courts of France. Is it necessary under such circumstances that the client himself should apply for the writ of mandamus? It was argued here that no one except the person that had title to the property could make ap application for a mandamus; that an attorney, as such, could *22 not make the application for the writ. But the rights that have been spoken of which appertain to the attorney, qua attorney, and appertain to him individually, irrespective of anybody else, shows that he has a property of a sort in this case which a court of justice will protect, and that it is very different from the case which was relied upon in argument, where an attorney seeks a mandamus to compel an officer to issue .a patent to a party for some subject-matter in which the party alone is interested. The attorney has no interest in the title to the property, and therefore cannot in the case supposed apply for and compel the issue of the mandamus, bécause he has no specific interest in the subject of the title. But in this case the attorney has specific interest, not in any distinctive title, but in a matter of property common to himself and all mankind, and in regard to which he has also, to a certain extent, what may be called a peculiar special property; the interest devolved upon him by his avocation of attorney in the proper prosecution of his professional rights and professional duties.
It seems, therefore, that the objection which is made by the Commissioner of Patents, upon the ground that the relator is not a party in interest having title to the property, does not avail when we consider the character and object of the application.
The Commissioner makes another objection, which is, that it does not appear to his satisfaction that the purpose for which it is wanted (viz., to be used in evidence in a case), is substantial, because he does not see how the matter is to become evidence.
Now, the court is of opinion that he is not placed in his pósition for any such purpose, and that it is sufficient that a reasonable suggestion of necessity for the use of a document for evidence be made in order to set in motion his duty to furnish the copy. He is not there to sit as a judge in the. controverted cause. If the suggestion be made by *23 a reasonable person and under reasonable conditions, that suggestion should be conclusive upon him so far as the efficacy of the paper for the purposes of evidence is to be an element in the application, for a copy for the purposes of evidence, under the clause of the statute which has been read.
But in this case it should have been evident to the Commissioner of Patents that it was his manifest duty to give the copy for two reasons: It appears upon the face of the application, not only that it is wanted for the purposes of 'evidence, but that in point of fact, properly considered, the paper which is in question and which he denies access to belongs to the public and is properly part and parcel of the patent with reference to the litigation about which the document has been wanted for purposes of evidence, for the reason that that rejected application and the descriptions of the matter contained in that rejected application are made, by reference, part of the very specification of the patent in question ; and, therefore, it was his duty, independent of the general requirement of furnishing a copy for the purposes of evidence, to have given that copy as part and parcel of the published patents and published specifications of the patent in question. Being incorporated into it by reference, it is in contemplation of law part and parcel of the specification of the patent, which patent, with its specifications, by the general provisions of law, it is incumbent upon the Commissioner of Patents to publish to the world in the various modes which have been indicated, under the rules of the Patent Office which have been read. It will appear in the 75th paragraph of the specifications of Patent No. 279,717, which is the patent of the party in question, that he does incorporate this rejected application in these words:
“While the sides of the counter-stiffeners will be pressed inward by the action of the mold J, to form what I term a ‘ reshaped unflanged counter/ substantially as shown and described by me in another application of even date herewith.”
*24 Which application “ of even date herewith ” is the rejected application which he now refuses to permit anybody to have access to. Of course, any lawyer, reading that specification and seeing that it referred to the rejected application for the purpose of part of its description, and as a more full and complete identification of its subject-matter, and of the manner in which the subject-matter acts, will see that that rejected application is by contemplation of law a parcel of the specification, and, therefore, that the whole public is entitled to have what is in that rejected application, in order to comprehend the nature of the specification in the patent which has been published; but the Commissioner of Patents (or, rather, we should.say, in justification of the Commissioner of Patents personally, some subordinate in his office, because he has so many large duties that all these things have to be confided to subordinates, and, consequently, although the return is under his name it is probably at second hand), notwithstanding the quotations that have been made, in his return undertakes to justify his refusal by a part of his return in which he says that he had referred the application to a subordinate, with this result: That his refusal to order such copy to be furnished to the relator was in the following words:
“ Examiner: Please report below, without delay, whether the abandoned application referred to in the letter attached contains any invention or matter not covered by patent No. 279,717."
“Benton J. Hall.”
“Respectfully returned, with remark that upon careful examination I am unable to find any legitimate connection between the Patent No. 279,717 and the abandoned application referred to. The patent covers a machine for the manufacture of counter-stiffeners, without reference to the special configuration. The abandoned application describes as the alleged invention a counter-stiffener of definite construction, and incidentally states that it may be made
*25 by a method claimed in the patent, and may also be made by other methods. The' patent and abandoned application stand clearly independent of each other.
“J. P. Chapman’
“ Examiner Div. 11.”
And then follows the rest of the communication:
“ The within request is denied, for the reason that the showing is insufficient wherein the abandoned application is material and important as evidence, and for the further reason that the Commissioner is advised by the Examiner that there is no legitimate connection between the Patent No. 279,717 and the abandoned application referred to.
“ Benton J. Hall,
. “ Commissioner.”
It seems, then, to have been on the above mistaken considerations that the Commissioner refused the application of the relator.
Without going any farther into the matter,- it must be apparent, from the review that has been given, that the Commissioner is without legal ground of objection to the demand which has been made by the relator in. the particular case; not only the general considerations referred to, but for the special reason deduced from the identity of the document itself, as one of the documents belonging to the public as parcel of patent and specification No. 279,717, and that the Commissioner should not have denied the application. And if the Commissioner had followed up the rules of his office, to which he refers, with a just appreciation of the relation between those two documents, the one to the other, he would have been enabled to escape from the error into which he was led by inadvertence in this particular instance. Amongst other things, in his return, he relies upon Rule 15, which is in these words:
“ Caveats and pending applications are preserved in secrecy. No information will be given, without authority, respecting the filing by any particular person of a caveat *26 or of an application for a patent or for the re-issue of a patent, the pendency of any particular case before the office, or the subject-matter of any particular application, unless it shall be necessary to the proper conduct of business before the office, as provided by Rules 97, 103, and 108.”
Now, if he had been enlightened as to the true nature of this application and the inter-dependence between these two documents, he would have found the following in the very next rule:
“16. After a patent has issued, the model, specification, drawings, and ' all documents relating to the case are subject to general inspection, and copies, except of the model, will be furnished at the rates specified in Rule 218.”
There was, therefore, his own Rule 16, which shows that it was imperative upon him, under circumstances such as have been indicated, appertaining to this particular document and its relation to an existing patent, to have granted the application which he has refused. All this was, doubtless, from inadvertence upon the part of the Commissioner of Patents, and it is only justice to the Commissioner that the court should say that he is not personally to have imputed to him any fault or misconduct, although, of course, hé is held legally responsible for the acts of his subordinates.
For these reasons, without enlarging further upon the matter, the court is of the opinion that the relator is entitled to the writ prayed for.